UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENDALL LAVANON BURTON,                     No. C-10-0471 EMC

          Petitioner,

      v.                                     **ORDER GRANTING PETITION FOR
                                           WRIT OF HABEAS CORPUS**

MATTHEW CATE, Secretary of California
Department of Corrections & Rehabilitation,

          Respondent.

_____/

      This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254.
The Court ordered Respondent to show cause why the writ should not be granted.  Respondent has
filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits
with the Court.  Petitioner has responded with a traverse.  For the reasons set out below, the petition
is **GRANTED**.

## I.   BACKGROUND

      An Alameda County Superior Court jury found Petitioner guilty of second degree robbery
and being a felon in possession of a firearm.  Sentence enhancement allegations were found true.  He
was sentenced to a total of twenty-one years in state prison.  *People v. McDaniels*, 2008 WL
4003116 at *1 (2008).[1]

---

[1] Petitioner Burton was tried with a codefendant, Shelton Timothy McDaniels, and both
were convicted.  They both appealed and the California Court of Appeal decided the appeals
together in one opinion.

United States District Court

For the Northern District of California

1    On direct appeal, the California Court of Appeal affirmed, rejecting the argument that

2    Petitioner pursues here. *Id.* The California Supreme Court denied a petition for review. Ex. 3.[2]

3    Petitioner committed an armed robbery of a patron who had just left a card club in

4    Emeryville. *People v. McDaniels*, 2008 WL 4003116 at *1-2. He and McDaniels, his getaway

5    driver, were caught in the neighborhood by Emeryville police officers. *Id.* at *2.

6    Petitioner's only claim is about the trial court's failure to find him incompetent to stand trial.

7    The facts relevant to that claim are set out in the discussion below.

8    **II.    STANDARD OF REVIEW**

9    This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in

10   custody pursuant to the judgment of a State court only on the ground that he is in custody in

11   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The

12   petition may not be granted with respect to any claim that was adjudicated on the merits in state

13   court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary

14   to, or involved an unreasonable application of, clearly established Federal law, as determined by the

15   Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

16   determination of the facts in light of the evidence presented in the State court proceeding." 28

17   U.S.C. § 2254(d).

18   When, as is the case here, "a federal claim has been presented to a state court and the state

19   court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in

20   the absence of any indication or state-law procedural principles to the contrary." *Harrington v.*

21   *Richter*, 131 S. Ct. 770, 784-85 (2011).

22   "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

23   arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

24   state court decides a case differently than [the] Court has on a set of materially indistinguishable

25   facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

26

27   _____

28   [2]  Citations to "Ex." are to the record lodged with the Court by the Attorney General.

**United States District Court**
For the Northern District of California

1    "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

2    state court identifies the correct governing legal principle from [the] Court's decisions but

3    unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  "[A] federal

4    habeas court may not issue the writ simply because that court concludes in its independent judgment

5    that the relevant state-court decision applied clearly established federal law erroneously or

6    incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.  A federal habeas court

7    making the "unreasonable application" inquiry should ask whether the state court's application of

8    clearly established federal law was "objectively unreasonable." *Id.* at 409.

9    In the discussion below the Court has first considered whether Petitioner's rights were

10   violated, then applied the AEDPA standard.  *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)

11   (AEDPA does not require federal habeas court to adopt any particular methodology in deciding

12   whether state court decision is contrary to or unreasonable application of clearly established federal

13   law); *Weighall v. Middle*, 215 F.3d 1058, 1063 (9th Cir. 2000) (may be easier in some cases to

14   review state court's application of federal law for error and, if there was none, conclude that

15   state-court decision was not unreasonable).

16                              **III.   DISCUSSION**

17   A.    Petitioner's Claim

18        Petitioner raises only one claim, that the trial court should have held a competency hearing.

19   The California Court of Appeal provided the background:

20                On December 13, 2006-the first day of jury selection-the court
             ordered Burton to undergo a medical evaluation pursuant to section
21           4011.5[3] "for possible seizures." That same day, the court referred
             Burton for a mental health evaluation pursuant to section 4011.6[4]
22

23        [3]  Section 4011.5 provides in relevant part, "Whenever it appears to a sheriff or jailer that a
     prisoner in a county jail or a city jail under his [or her] charge is in need of immediate medical or
24   hospital care, and that the health and welfare of the prisoner will be injuriously affected unless he [or
     she] is forthwith removed to a hospital, the sheriff or jailer may authorize the immediate removal of
25   the prisoner under guard to a hospital, without first obtaining a court order as provided in Section
     4011."
26

27        [4]  Section 4011.6 provides in relevant part, "In any case in which it appears to ... any judge of
     a court in the county in which the jail ... is located, that a person in custody in that jail ... may be
28   mentally disordered, he or she may cause the prisoner to be taken to a facility for 72-hour treatment
     and evaluation pursuant to Section 5150 of the Welfare and Institutions Code and he or she shall

United States District Court

For the Northern District of California

because Burton complained of "having problems with current medications-[and] fear[ed] losing control under stress." On December 18, 2006, Burton complained of blackouts and pain in his abdominal and kidney areas. The court referred Burton for another section 4011.5 medical evaluation and noted that Burton was "to be seen by a neurologist ASAP."

At a hearing on December 21, 2006, Burton's counsel asked the court to institute section 1368 proceedings.[5]  Counsel explained that Burton was having difficulty assisting him during jury selection because Burton "hears voices quite a bit" and because he believed people were taking pictures of him during jury selection. Counsel also informed the court that Burton believed the jurors were "agents" of an unspecified entity. Counsel opined that the "stress of the trial [was] bringing it out" and expressed his concern that Burton was "not going to be able to rationally help in the defense" of the case. Counsel also stated that Burton had not been able to "intelligently, rationally discuss the charges since jury selection."

The court asked Burton, "You know what we've been doing in your case, right? We've been picking a jury, right?" Burton replied, "Yeah." The court also asked, "We're starting your trial, correct?" to which Burton replied, "Yeah." Burton initially confused the charges in the current case with a burglary case pending against him in Sacramento. Later, however, when the court asked Burton whether he understood that the prosecutor in this case was accusing him of "sticking a guy up with a gun and taking something from him," Burton replied, "Yes." Burton told the court that he thought he would be going home in early January because an inmate in jail told him the case was "over with." Burton later stated that he believed he was being charged with burglary.

The court reviewed Burton's medical records. At the end of the hearing, the court deferred the request to institute section 1368 proceedings and referred Burton for another mental health evaluation pursuant to section 4011.6. The court's written referral note stated, "Possibly delusional [and] unable to comprehend charges [and] nature of proceedings. We are starting trial. Is he capable of assisting in his defense, or should [section] 1368 proceedings be initiated?" The

---

inform the facility in writing, which shall be confidential, of the reasons that the person is being taken to the facility."

[5]  Section 1368 provides in relevant part, that "(a) If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent.... At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time. [¶] (b) If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369...."

one-paragraph section 4011.6 report, completed by Penelope Russell, Ph.D., on December 21, 2006, stated that Burton "is now refusing his medications. He is paranoid-does not trust his att[orne]y or anyone who works for a government agency. He believes his case was dismissed and he'll be released. No insight. *[sic]Initiating [section] 1368 proceedings would be appropriate."

The court reviewed Russell's section 4011.6 report at a hearing on January 2, 2007, and declined to conduct a section 1368 competency hearing. It explained that Burton's confusion between robbery and burglary, and his belief that his case would be dismissed, were not "the product of incompetence. I believe it's malingering.... There may be a certain amount of paranoia. There may be some naivety, but it is not my feeling that ... Burton is incompetent, and in fact I've had certain interactions with him.... I've had some off-the-record interactions with him with regard to little housekeeping matters. For example, his clothing ... being dressed out, medical issues, that he needed a [section] 4011.5 order for, and so there's been a little bit of interaction between me and ... Burton in that regard.... [¶] ... [¶] ... Based on everything, it does not appear to me that ... Burton is incompetent. He may have some problems, but it doesn't appear to me that he's incompetent, so I have no intention of suspending proceedings pursuant to section 1368 ."

*People v. McDaniels*, 2008 WL 4003116 at *2-3.

B.   Federal Constitutional Standard

Due process requires a trial court to conduct a competency hearing sua sponte if a reasonable judge would have a bona fide or good faith doubt concerning the defendant's competence to stand trial. *Pate v. Robinson*, 383 U.S. 375, 385 (1966); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994). *See also Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (calling a claim of trial court error for failing to conduct a competency hearing a "procedural incompetence claim"). This standard is "clearly established Federal law, as determined by the Supreme Court" within the meaning of 28 U.S.C. § 2254(d)(1). *Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000) (citing *Pate*, 383 U.S. at 385). A good faith doubt about a defendant's competence arises "if there is substantial evidence of incompetence." *Cacoperdo*, *supra*, citing *United States v. Lewis*, 991 F.2d 524, 527 (9th Cir.), *cert. denied*, 510 U.S. 878 (1993).

C.   Record on Competency

The evidence in the record regarding Petitioner's competency at the time the trial court declined to hold a competency hearing consists of the statements by defense counsel at the time he requested a hearing, Petitioner's answers to questions from the court, Petitioner's mental health

record from the jail, the report from the jail psychologist, and the court's description of its

interactions with Petitioner.

At a hearing on December 21, 2006, the court initially questioned Petitioner regarding his

physical health.  Part of the exchange:

| | |
|---|---|
| The Court: | Have you  been having those blackouts we talked about, still? |
| Defendant Burton: | I don't know if it was a blackout  this time.  I just woke up paralyzed. |
| The Court: | I'm sorry? |
| Defendant Burton: | I just woke up paralyzed. |
| The Court: | You woke up, and you couldn't move? |
| Defendant Burton: | Yeah. |
| The Court: | How long did that last?  Actually, let me stop you.  You mean today? |
| Defendant Burton: | Yeah. |
| The Court: | This morning? |
| Defendant Burton: | (Nods head.) |
| The Court: | Yeah? |
| Defendant Burton: | Yes. |
| The Court: | How long did you lay there, not being able to move? |
| Defendant Burton: | It wasn't that long. |
| The Court: | And then once you could move okay – once you could move, could you move your whole body okay? |
| Defendant Burton: | Yeah |
| The Court: | You were just paralyzed for a moment? |
| Defendant Burton: | Yes. |
| The Court: | Has that ever happened before? |
| Defendant Burton: | Yes. |
| The Court: | Does it happen everyday? |
| Defendant Burton: | No. |
| The Court: | Just sometimes? |

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1      Defendant Burton:      Yes.

2      The Court:      How many times do you think in a week, usually?

3      Defendant Burton:      Probably  like every other week, maybe.

4      The Court:      Maybe one time every other week?

5      Defendant Burton:      Yeah.

6      The Court:      You get headaches, too?

7      Defendant Burton:      Yeah.

8      The Court:      A lot?

9      Defendant Burton:      Migraines.

10     The Court:      Migraine?  Headaches?

11     Defendant Burton:      (Nods head.)

12     The Court:      Is that something that's been going on all your life?

13     Defendant Burton:      No.

14     The Court:      A long time?

15     Defendant  Burton:      (Nods head.)

16     The Court:      Did a doctor tell you those were migraines?

17     Defendant Burton:      No.

18     The Court:      How do you know they're migraine headaches?

19     Defendant  Burton:      They hurt bad.

20     The Court:      Okay.  The reason I ask is, I've known people to have migraines, and
21     they explain to me what it's like to get a migraine headache, and it gets so bad you just can't do anything.  It makes you useless.  Is that
22     how you feel when you get one of those?

23     Defendant Burton:      Yeah.

24     The Court:      Okay.  You know what we've been doing in your case, right?  We've been pi[ck]g a jury, right?

25     Defendant Burton:      Yeah.

26     The Court:      And you know that the jury is for, right?

27     Defendant Burton:      For what?

28     The Court:      Well, we're starting your trial, correct?  You know that, right?

**United States District Court**
For the Northern District of California

1  Defendant Burton:     Yeah.

2  The Court:     And you remember what you're charged with – what they are accusing
3                 you of?  What the D.A. is claiming you did?

4  Defendant Burton:     Burglary.

5  The Court:     Okay.  Back in the past, right?

6  Defendant Burton:     Yeah.

7  The Court:     Do you know what the charges are in this case?

8  Defendant Burton:     I haven't had a chance to see them.

9  The Court:     You haven't had a chance?

10 Defendant Burton:     (Shakes head.)

11 The Court:     You know you're charged with a robbery, right?  An armed robbery?

12 Defendant Burton:     I don't think that's true.

13 The Court:     No, I'm just asking, you know that's what you're charged with –

14 Defendant Burton:     I thought I was charged with burglary.

15 Mr. Davis:     He's not asking about the facts of what happened.  Do you know what
16                you're charged with?  Do you know why you're here?  What the
17                charges are?

18 Defendant Burton:     Can you show me?

19 The Court:     Did you bring the file with the charges?

20 Mr. Davis:     I have the information.

21 The Court:     Okay.  I'm just trying to get a sense of where your head is at.  Do you
22                understand that they're accusing you of sticking a guy up with a gun
23                and taking something from him –

24 Defendant Burton:     No.

25 The Court:      – over in Emeryville, that's what they're charging you with.  Do you
26                understand that?

27 Defendant Burton:     Do I understand it?

28 The Court:     Yeah.

   Defendant Burton:     The claims?

   The Court:     Yes, that that's [sic] what the D.A. is claiming.  I'm not saying that's
                  what you did.  I'm just saying that's what the D.A. is accusing you of.

| | |
|---|---|
| Defendant Burton: | Right now? |
| The Court: | Yeah.  Do you understand that? |
| Defendant Burton: | Yes. |
| The Court: | Do you understand that we've been picking a jury for your trial on that charge?  You understand that, right? |
| Defendant Burton: | I thought it was for burglary? |
| The Court: | Okay.  What do you think a burglary is? |
| Defendant Burton: | Running in somebody's house. |
| The Court: | Okay.  Is there something pending in Sacramento? |
| Ms. Santos: | (Nods  head.) |
| The Court: | What's the charge?  Do you know? |
| Ms. Santos: | I think it's 211.  I just know that there's a hold. |
| Mr. Davis: | It shows en route.  It doesn't show a hold. |
| The Court: | That's what en route means, which is a hold – |
| Mr. Davis: | Okay. |
| The Court: |  – on a warrant. |
| Mr. Davis: | No document number is attached to it that I know of. |
| The Court: | All right.  Do you understand we've been – we're starting a trial, right?  You know that? |
| Defendant Burton: | Yeah. |
| The Court: | Okay.  And this week, and some of  last week, we've been picking a jury, right?  For your trial, right? |
| Defendant Burton: | Yeah. |
| The Court: | And you understand we're going to finish picking that jury after we come back on January 2nd, right?  That's the next time you're going to dress out, right? |
| Defendant Burton: | I'll be released. |
| The Court: | I'm sorry? |
| Defendant Burton: | I thought I was going home January 2nd. |
| The Court: | What made you think that? |

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1  Defendant Burton:     Holidays.

2  The Court:     Okay.  What made you think you were going to go home January 2nd?
   That's after the holidays.

3

4  Mr. Davis:     Do you understand the question?

5  Defendant Burton:     No, I don't understand the question.

6  The Court:     Okay.

7  Defendant Burton:     Could you rephrase it?

8  Mr. Davis:     You thought you were going home January 2nd?

9  Defendant Burton:     Yeah.

10  Mr. Davis:     Why did you think that?

11  Defendant Burton:     The case was over with.

12  Mr. Davis:     Because the case is over with?

13  The Court:     You know, I told this jury, this jury, the people to come back January
   2nd, right?  You know that, right?

14  Defendant Burton:     I thought you sent them home for the holidays.

15  The Court:     Yeah, I did, and then after the holidays, they're coming back, and then
   we're going to keep going with your trial.  Did you know that?

16

17  Mr. Burton:     No.

18  The Court:     What did you think was going to happen when we came back January
   2nd?

19  Defendant Burton:     I thought it was over with.

20  The Court:     You knew we were coming back on January 2nd, didn't you?

21  Defendant Burton:     I thought I was being released.

22  The Court:     Did you think the charges went away?

23  Defendant Burton:     Yeah.

24  The Court:     Why did you think they went away?  What did you think made them
   go away?

25

26  Defendant Burton:     That's what somebody told me.

27  The Court:     Who told you?

28  Defendant Burton:     The ward.

**United States District Court**
For the Northern District of California

1    Mr. Davis:      What?

2    Defendant Burton:      The ward.

3    The Court:      A ward?

4    Defendant Burton:      Yeah.

5    The Court:      What's a ward?

6    Defendant Burton:      A person.

7    The Court:      You mean a person by the name of Ward?

8    Defendant Burton:      No.  You a ward, right, when you in jail?

9    Mr. Davis:      Someone who's an inmate in the jail with you?

10   Defendant Burton:      Yeah.

11   Mr. Davis:      Another inmate?

12   The Court:      Okay.  And when were you told that?

13   Defendant Burton:      Like right after you sent them home.

14   The Court:      Okay.  Before you were told that, what did you think was happening?

15   Defendant Burton:      I don't know.  I thought I wasn't going to come back.

16   The Court:      Here's what I'm going to do. I'm going to – if you want, if Mr. Davis
17                   needs to chat with you a little bit, that's fine, but I'm going to send
                     you back in there, and we're going to wait for those records he was
                     talking about.  Your lawyer is having some records brought down here
18                   for me to look at.

19   Mr. Davis:      From Santa Rita.

20   Defendant Burton:      I don't have no record.

21   The Court:      But he's getting some records for me to look at from the doctors.  I'm
22                   going to take a look at those, and I'll get you back out here, and we're
                     going to chat some more, okay?  But for right now, I'll just have you
23                   go in there, okay?

                     We're off the record.

24
     (Recess.)

25
     The Court:      We're on the record. Mr. Burton is present. Mr. Davis is present.  Ms.
26                   Santos is present.

27                   The record will reflect that Mr. Michael Rosenblum, who is the
                     investigator for Mr. Davis, arrived here in court and delivered to me
28                   an envelope from Criminal Justice Mental Health, which was sealed.  I

**United States District Court**
For the Northern District of California

1

2

3

unsealed it, a manila envelope.  I found inside another manila envelope, which was sealed, which I unsealed, and I reviewed the contents.  It's Mr. Burton's records at Criminal Justice Mental Health, which documents the contacts that they've had with him out at Santa Rita, since, if I remember correctly, I think the first entry was some time in September.  Does that sound right?  What's the arrest date?

4

5

Mr. Davis:  December.

6

The Bailiff:  9/18/06. Booking Date, 9/18.

7

8

9

The Court:  I've reviewed these, and I have resealed them, and what I'm going to do is give them to Maggie to – they're going to be – we'll file the envelope which contains the sealed records, so they'll be maintained as a record of what I've reviewed.  And I reviewed those in connection with Mr. Davis's assertion that he feels his client perhaps – perhaps we should initiate 1368 proceedings.  Is that what you're asking for, Mr. Davis?

10

Mr. Davis:  Yes.

11

12

13

The Court:  Okay.  Mr. Burton, what I'm going to do is ask the doctors to see you again, to talk to you again, to write me a report about what they think after they talk to you.  Do you understand that?

14

(Mr. Davis is conferring with his client.)

15

The Court:  I'm going to let you guys chat for a moment.

16

We're off the record.

17

Ex. 4, part 6 at 5-14.

18

The mental health records to which the trial court referred in the quotation above are in the

19

record as exhibit 5.  Briefly, they show initial "Provisional Diagnoses" of "Psychotic Disorder,"

20

"Polysubstance Dep[endency]," and "impulse control disorder," on September 19, 2006;

21

prescription of Zoloft, an antidepressant, on October 20, 2006, December 15, and December 20; and

22

Trilofin, used to treat schizophrenia, on November 15, 2006, December 15, and December 20.  Ex.

23

5.

24

When the court went back on the record it asked counsel to explain the basis for his motion

25

for competency hearing:

26

The Court:  We're on the record – back on the record.

27

Mr. Davis and Mr. Burton have had an opportunity to talk.  About your client's competence, right?

28

12

United States District Court

For the Northern District of California

| | | |
|---|---|---|
| 1 | Mr. Davis: | Ability to assist in his own defense. |
| 2 | The Court: | Tell me what it is – tell me why it is you feel that I should suspend proceedings pursuant to section 1368? |
| 3 | | |
| 4 | Mr. Davis: | Because – well, Mr. Burton has problems – |
| 5 | The Court: | You need to speak up. |

Mr. Davis:   He has problems.  He hears voices quite a bit, and he has ideation that is problematical in jury selection.  For instance, he has expressed the, you know, the opinion that some of the jurors are agents, and he's reiterating that it's true.  That some of the jurors were agents in discussing the exercise of peremptory challenges, for instance.

As the day wore on on Monday, and as the jury selection process proceeded, and we were exercising peremptory challenges, his input during this process, as the day went on, became more and more off task, off the subject. He, by the end of the day, was telling me that there were agents in the jury. That they were – another thing – he reminds me of right now – he was of the opinion that people were taking pictures of him during the jury selection procedure. Various people in the courtroom, apparently, he thought had cameras. "I see a camera." I just was not able to get his help, his input, his involvement in the jury selection procedure.

There was an escalating component of it which leads me to believe that the stress of the trial is bringing it out. It's accelerating the symptoms and making it harder for him. I'm contemplating that if he's in the same state when the trial commences, as he was at the close of Monday's jury selection, he's not going to be able to rationally help in the defense, the decision to take the stand to testify or not. Various tactical questions may come up during the course of the trial, which I don't want to bring to anyone's attention right now. It's trial prep attorney-client, but I'm going to be needing him at various points of the trial to communicate with me rationally about evidence that comes in, about decisions to be made, and I don't think he could do it based upon what I saw –

The Court:   From where I sit, it looks like the two of you communicate pretty freely.

Mr. Davis:   In a way we do.

The Court:   When you ask him questions, does he respond appropriately to your questions?

Mr. Davis:   Sometimes.

The Court:   Does he ask you appropriate questions about the case, the proceedings?

**United States District Court**
For the Northern District of California

| | | |
|---|---|---|
| 1 | Mr. Davis: | Not often. |
| 2 | The Court: | Pardon me? |
| 3 | Mr. Davis: | Not often. |
| 4 | The Court: | Has he been able to discuss the nature of the charges with you? |
| 5 | Mr. Davis: | Yes. Before the trial, yes. |
| 6 | The Court: | Did he express – appear to appreciate the nature of the charges, when you've talked to him? |
| 7 | Mr. Davis: | In the past, yes. |
| 8 | The Court: | What about now? |
| 9 10 11 12 | Mr. Davis: | No.  I don't believe so, no.  The charges are what you're being charged with, why you're here, what the jury is going to decide, whether you're guilty or not guilty of these charges. Robbery, use of a gun, having a gun in your possession when you're a felon, these are charges – |
| | Defendant Burton: | What you talking about? |
| 13 14 15 16 | Mr. Davis: | We have not been able to intelligently, rationally discuss the charges since jury selection. There were offers on the table twice.  There was a seven year offer, there was a nine year offer, and both were turned down. And at this point, he has exposure far in excess of that, and I'm not really sure he understands that, at this point. |
| 17 18 | The Court: | Mr. Burton, they've got you accused of an armed robbery. Do you know what armed robbery is? |
| 19 | | Do you know what that is? |
| 20 | Defendant Burton: | Yeah. |
| 21 | The Court: | You know what burglary is, right? Like if you go into somebody's house? |
| 22 | Defendant Burton: | That's a robbery. |
| 23 | The Court: | What's that? |
| 24 | Defendant Burton: | That's a robbery. |
| 25 | The Court: | What is? |
| 26 | Defendant Burton: | You go into somebody's house. |
| 27 28 | The Court: | Okay.  They've got you accused of, in this case, it's pointing a gun at somebody and taking his property from him out on the streets in Emeryville.  Do you understand that's what you're |

|   |   |   |
|---|---|---|
| | | accused of?  That's what the D.A. is charging you with.  You know that?  Do you understand that? |
| | Defendant Burton: | No. |
| | Mr. Davis : | Robbery, not burglary. |
| | The Court: | Here's what I'm going to do.  I'm going to have a doctor come and talk to you, just talk to you, and you talk to him, and I'm going to have that doctor write me a report and tell me what he thinks about where your head is at, but you got to talk to him.  And then when we come back to court on January 2nd, hopefully I'll have that report first thing in the morning, and I can figure out what to do.  I'm going to defer – this is all in an effort make a ruling on Mr. Davis's request to suspend proceedings pursuant to section 1368, actually, and the following sections of the Penal Code, and I will ultimately have to make a determination. |
| | | I've had my own observations and interactions with Mr. Burton.  I've watched your interactions with Mr. Burton, Mr. Davis, and I've listened to your comments about the substance of those interactions.  I have to make a determination on whether he's incompetent or is it something else, including the possibility of malingering, but I got to make that call initially.  So I'm going to 4011.6 him again, get a report in an effort to try to make – get some more informa[ti]on. |

Ex. 4, pt. 6 at 14-19.

"The court's written referral note stated, 'Possibly delusional [and] unable to comprehend charges [and] nature of proceedings.  We are starting trial.  Is he capable of assisting in his defense, or should [section] 1368 proceedings be initiated?'" *People v. McDaniels*, 2008 WL 4003116 at *3. The report that was returned to the court was signed by "Penelope Russell, PhD.," and dated December 21, 2006.  *Id.*  Dr. Russell stated that Burton was "now refusing his medications.  He is paranoid-does not trust his att[orne]y or anyone who works for a government agency.  He believes his case was dismissed and he'll be released.  No insight. *[sic*  Initiating [section] 1368 proceedings would be appropriate."  *Id.*

When the court reconvened on January 2, 2007, it took up the question whether a competency hearing should be held:

|   |   |   |
|---|---|---|
| | The Court: | We're on the record.  Mr. Burton is present.  Mr. Davis is present,  representing him.  Ms. Santos is here for the people. |
| | | Mr. Mance is here for Mr. McDaniels, who's not here yet, but he's not required to be.  This has to do with Mr. Burton.  Mr. |

1        Mance, to bring you up-to-date, the week before last, Mr.
         Davis had Mr. Burton added on the calendar.  You were gone.
2        I think we called your office –

3    Mr. Mance:      Yes, I was told.  Mr. Davis, as well.

4    The Court:       – to deal with the question of  whether 1368 proceedings
         should be initiated as to Mr. Burton.  I referred him for a
5        4011.6 examination and evaluation, asked for a report, and put
         it over to this  morning.  That's where we are, so that's what
6        we're dealing with right now.  Mr. Burton, good morning.

7    Defendant Burton:      Good morning.

8    The Court:      Happy New Year.

9    Defendant Burton:      Happy New Year.

10   The Court:      Last time we were here, Mr. Burton, you – among other things,
         you and I had a little talk on  the record.  Your lawyer was
11       here.  You told me that you thought that you were charged with
         burglary, and that your case was being dismissed, and you
12       were being released.  And I asked you why you thought that,
         and you said somebody out there at the jail told you that.  Do
13       you remember you and me having that conversation about a
         week and a half ago?
14
     Defendant Burton:      (No  response.)
15
     The  Court:      Anyway, you still believe that the charges are going to be
16       dismissed, and you were going to be released?

17   Defendant  Burton:      I thought I was supposed to come back today for a
         progress report.  I thought it was supposed to be over,
18       and instead –

19   The  Court:      What made you think that?

20   Defendant  Burton:      Hmm?

21   The  Court:      What made you think that?  Why did you think that?

22   Defendant  Burton:      I thought you dismissed the case.  Everybody was sent
         home.
23
     The Court:      Okay.  And why did you think I dismissed the case?
24
     Defendant Burton :      You sent everybody home.
25
     The Court:      Okay.  All right.  You know you're charged with robbery,  right?
26
     Defendant Burton:      Robbery?
27
     The Court:      Yeah.
28

16

**United States District Court**
For the Northern District of California

| | |
|---|---|
| 1 | Defendant Burton:    It's burglary, ain't it? |
| 2 | The Court:    Okay.  All  right.  I received a written report of sorts.  It's not a public matter.  It's a confidential matter.  Not much of a report, but it does just make a single line statement regarding what I asked for, initiating 1368 proceedings would be appropriate. That's the only mention of that particular subject.  The rest just basically tells us what we already knew, that he's refusing his meds, and there's paranoia.  He believes his case will be dismissed, and he'll be released.  I think in that respect he's malingering. |

I had him here a week and a half ago. We had this conversation already.  I told him no.  He's telling me the same thing.  I don't believe it's the product of incompetence.  I believe it's malingering. He – there may be a certain amount of paranoia.  There may be some naivety, but it is not my feeling that Mr. Burton is incompetent, and in fact, I've had certain interactions with him.  Some on the record. Some off the record.  And maybe, if – you can dispute this if you want,

| | |
|---|---|
| Mr. Davis: | Yes.  I think the 4011.5 was related to seizures which are actually related to the .6 but, in essence, I agree. |
| The Court: | Well, also stomach pain. |
| Mr. Davis: | Stomach pain.  That's right. |
| The Court: | My point is this:  I've had some personal interactions with Mr. Burton. I had conversations with him about matters unrelated to the issues in the trial. |
| Mr. Davis: | Right. |
| The Court: | I just wanted to know if you agreed to all that, that you've been present and participated in those actions. |
| Mr. Davis: | That's right. |
| The Court: | Okay.  Based upon everything, it does not appear to me that Mr. Burton is incompetent.  He may have some problems, but it doesn't appear to me that he's incompetent, so I have no intention of suspending proceedings pursuant to Section 1368.  We'll continue with the matter. |

I do appreciate, Mr. Davis, you bringing it to my attention to look into, and while there certainly are some issues, I think that it appears to me, it – perhaps maybe Mr. Burton is trying to turn it into a bigger issue, and I'm not going to permit that to happen.  So that being the case –

| | |
|---|---|
| Mr. Davis: | Before we go off, could I state a position a little bit for the record, though? |
| The Court: | Well, you did that a week and a half ago. |

**United States District Court**
For the Northern District of California

| | | |
|---|---|---|
| 1 | Mr. Davis: | Right, but based on this morning – |
| 2 | The Court: | Go ahead. |
| 3 | Mr. Davis: | This morning, I again asked Mr. Burton if – several questions, |
| 4 | | including "Why are we here?" and that – he does not seem to be at all engaged, and I'm just reiterating that what was true a week and a half |
| 5 | | ago, seems to my uneducated – but involved in these proceedings, I – that Mr. Burton is not really helping with his own defense, whether |
| 6 | | this is by choice, whether this is not by choice, it's something that I am not qualified to make a call on. |
| 7 | | All I can say – I'm not a psychiatrist. I'm just a lawyer. All I can see, |
| 8 | | though, is what the surface result is here, and that is that he's not engaged. He's not helping with his own defense. I've asked him |
| 9 | | questions. He does not seem to be able to answer them in any kind of realistic way, so – |
| 10 | The Court: | Interestingly enough, though, my perception is, when we start dealing |
| 11 | | with other things that are not related to the trial, he's fully capable of doing that. That's why I reached the conclusion that I had, but I |
| 12 | | appreciate your comments. |
| 13 | Mr. Davis: | All right. |
| | The Court: | And so we are going to go ahead and proceed, and we're off the record |
| 14 | | right now. |

Ex. 4, Part 6 at 20-24. After a recess, jury voir dire commenced.

In addition, the court of appeal identified the following exchange as evidence that Petitioner understood the proceedings and was able to assist counsel. *People v. McDaniels*, 2008 WL 4003116 at *6. Discussing a stipulation:

| | | |
|---|---|---|
| 19 | The Court: | You're offering to stipulate to his status as a felon? |
| 20 | Mr. Davis: | Yes. |
| 21 | The Court: | Okay. Mr. Burton, has he talked to you about that? |
| 22 | Defendant Burton: | Yes. |
| 23 | The Court: | You understand what he's offering to do? To stipulate – he's |
| 24 | | not offering to stipulate that you committed this crime of possessing a gun when you were a convicted felon. He's |
| 25 | | saying you guys will stipulate that you're a convicted felon, but you're still denying you possessed any gun. They just have |
| 26 | | to decide whether you had a gun or not. The purpose of doing this is so the D.A. doesn't get to prove what felony you were |
| 27 | | convicted of. Do you understand all that? |
| | Defendant Burton: | Yes. |
| 28 | | |

18

The Court:       Are you willing to agree to the stipulation your lawyer is offering?

Defendant Burton:     Yes.

The Court:       Okay.  I'll accept that stipulation.

. . . .

The Court:       Second thing, are you requesting also that the trial on the issue of the alleged prior be bifurcated?  The trial on the question of guilt or innocence of the charged prior?

. . . .

The Court:       Do you understand what he's talking about there?  Again, you're charged with having a prior, right?  The D.A. has to prove that.  He's asking to do that in a separate trial.  Only if you're found guilty of the crimes, then we'll have a second little trial to see if you really have this prior, but that way the jury doesn't get to hear about the prior in the first trial.  Do you understand?  It's the same thing.

Defendant Burton:     Yes.

The Court:       You agree with what he's asking for now, right?

Defendant Burton:     Yes.

Ex. 4, part 1 at 22-23.

D.    Constitutional Violation

To be competent to stand trial, a defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975t).  As noted above, due process requires a trial court to conduct a competency hearing sua sponte if a reasonable judge would have a bona fide or good faith doubt concerning the defendant's competence.  *Pate v. Robinson*, *supra*, 383 U.S. at 385; *Cacoperdo v. Demosthenes*, *supra*, 37 F.3d at 510.  Good faith doubt arises where there is "substantial evidence of incompetence."  *Id.*  Stated differently, a good faith doubt about a defendant's competence arises if "'a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.'" *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010) (quoting *Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (en banc)).  "'[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial

19

United States District Court

For the Northern District of California

1    are all relevant in determining whether further inquiry is required,' and 'one of these factors

2    standing alone may, in some circumstances, be sufficient.'" *Id.* (quoting *Drope*, 420 U.S. at 180).

3          As the evidence set out in the section above demonstrates, there was substantial, if not

4    overwhelmingly, evidence that Petitioner was not competent to stand trial.  This evidence includes:

5    (1) the colloquy between judge and Petitioner quoted above demonstrating, *inter alia*, Petitioner's

6    lack of understanding of the proceedings (he thought he would be released) and the charges

7    (burglary rather than robbery), (2) medical records showing an initial diagnosis which include

8    "Psychotic Disorder," and (3) the conclusions of the examining expert, Dr. Penelope Russell, stating

9    Petitioner was paranoid, did not trust his attorney, believes his case was dismissed and he will be

10   released, and lacks insight, and recommending initiating competency proceedings under Penal Code

11   § 1368; and (4) defense counsel expressing doubts about his client's competence to stand trial and

12   assist in the defense and gave detailed reasons therefor.  As the Ninth Circuit has explained,

13   "'defense counsel will often have the best-informed view of the defendant's ability to participate in

14   his defense.'"  *United States v. Dreyer*, 693 F.3d 803, 810 (9th Cir. 2012) (quoting *Medina v.*

15   *California*, 505 U.S. 437, 450 (1992)).  Here, defense counsel's observations dovetailed with the jail

16   mental health records in terms of observing that the client had blackouts, was paranoid and was

17   suffering auditory hallucinations.

18         The only evidence to the contrary is the trial court's summary statement that it did not

19   believe Petitioner was incompetent, based on observations that were limited in nature (*i.e.*, what the

20   judge could see (but presumably not hear) in the interactions between Burton and his attorney, and

21   regarding medical issues and some other undescribed observations, as well as Petitioner's responses

22   to some leading questions by the trial court.  The later were relied upon by the Court of Appeal in

23   concluding that there was no need to hold a competency hearing.  The Court of Appeal noted:

24              [T]here was evidence before the Court that Burton understood
                the nature of the proceedings and was able to rationally assist his
25              attorney in the conduct of his defense. In response to the Court's
                questions at a hearing on December 21, 2006-the same day as his
26              mental health evaluation-- Burton stated that he understood that the
                attorneys were picking a jury and starting trial. Burton also indicated
27              that he understood that the prosecutor was charging him with robbery.
                And a week before his mental health evaluation, Burton was able to
28              discuss with his attorney a stipulation regarding his prior conviction

1    and to understand the significance of that stipulation. Accordingly,
2    Burton appeared fully capable of assisting counsel in the conduct of a
     defense in a rational manner. (*See People v. Rundle* (2008) 43 Cal. 4th
3    76, 180; *see also People v. Halvorsen* (2007) 42 Cal. 4th 379, 407
     ["nothing in this record suggests that [the] defendant lacked a rational
4    understanding of the roles of the judge, prosecutor, defense counsel, or
     jury in this case, or the purpose of the proceedings"].)

5    *Id.* at *6-*7.

6           As to the first of these points, when the Court of Appeal said that Petitioner understood that a

7    jury was being picked and trial starting and understood the charges against him, the court apparently

8    was referring to the exchanges quoted above.  That exchange as to Petitioner's knowledge that a jury

9    was being picked, however, contains only one-word answers to the court's leading questions.  And

10   the exchange as to the charges, in which Petitioner thought he was charged with burglary (rather

11   than robbery), is hardly evidence of competence to stand trial and assist in his defense.  The

12   exchange about the stipulation, quoted above, also contains only one-word answers from Petitioner.

13   Any suggestion of competence that might be inferred from these isolated portions of the colloquy is

14   belied by the entirety of colloquy, the medical reports, the expert's examination and the

15   representations of defense counsel which strongly indicated Petitioner's incompetence to stand trial

16   and inability to assist in his defense.

17          As the United States Court of Appeals said in *Odle v. Woodford*, 238 F.3d 1084 (9th Cir.

18   2001), "[t]he [trial] judge may be lulled into believing that petitioner is competent by the fact that he

19   does not disrupt the proceedings, yet this passivity itself may mask an incompetence to meaningfully

20   participate in the process."  *Id.* at 1089 (no motion for competency hearing by defense counsel; "no

21   one" questioned competence over two years of pretrial proceedings and twenty-eight days of trial;

22   extensive evidence of mental impairment, including expert evidence, sufficient to trigger need for

23   hearing).  Although a trial court's observations might be evidence of competency, here the trial

24   judge provided no details or specific explanation, and thus the value of these observations is

25   minimal.  The weak evidence of competence is vastly outweighed by the substantial evidence of

26   incompetence.  If the trial court's conclusory statements here were sufficient to preclude a hearing,

27   there could be no effective review of the ruling even in the face of a substantial record.

28

United States District Court

For the Northern District of California

The Court concludes that where as here there is substantial, even overwhelming, evidence of incompetence, the trial court's failure to hold a hearing on Petitioner's competence violated his due process rights. *See Pate v. Robinson*, 383 U.S. at 386 ("While [defendant's] demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue.").

E.      Reasonableness of Last Reasoned State Court Opinion

The Court has determined above that Petitioner's due process rights were violated by the trial court's failure to hold a hearing on competency. A state court finding that the evidence before a trial court did not require a hearing on competency is a finding of fact. *Torres v. Prunty*, 223 F.3d 1103, 1105 (9th Cir. 2000). Therefore, the question before the Court now is whether the Court of Appeal's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2). Because the standard for the constitutional requirement to hold a competency hearing is whether a reasonable judge in the trial court's position would have experienced doubt about competency, *Maxwell v. Roe*, 606 F.3d at 568, the question on habeas review is whether the California Court of Appeal was unreasonable in determining that a reasonable judge in the trial judge's position would not have experienced doubts about Petitioner's competency.

In its ruling, the California Court of Appeal discounted that value of the expert report, stating:

> Burton contends the December 21, 2006 section 4011.6 report constitutes "substantial evidence" of his incompetence because it states that "instituting [section] 1368 proceedings would be appropriate." We disagree. While the report does state-in conclusory fashion-that conducting a section 1368 hearing would be appropriate, it conspicuously avoids stating that Burton suffered from a "mental disorder or developmental disability" which would prevent him from understanding the nature of the legal proceedings or assisting counsel in the conduct of his defense. (§ 1367, subd. (a).)

*People v. McDaniels*, 2008 WL 4003116 at *5-*6. But the question which the expert was answering was "[i]s he capable of assisting in his defense, or should [section] 1368 proceedings be initiated?" *Id.* at *3. As noted above, the answer was that Petitioner was "paranoid," did not trust his attorney, erroneously believed his case had been dismissed, and that "[i]nitiating [section] 1368 proceedings

United States District Court

For the Northern District of California

1    would be appropriate." *Id.* Given the question posed to the expert, the Court of Appeal was

2    unreasonable in determining the report did not conclude that Petitioner was unable to assist counsel

3    in his defense. The report contained specific findings directly probative of Petitioner's competence

4    to stand trial and recommended a § 1368. Dr. Russell answered the questions asked of her. Dr.

5    Russell's report was directly probative to the question whether there was good faith doubt as to

6    Petitioner's competence to stand trial. Furthermore, for the reasons discussed above, the Court of

7    Appeal's reliance upon the two short exchanges between Petitioner and the trial court in rejecting

8    the appeal was not reasonable. The meager evidence of competence does not negate the clearly

9    substantial evidence of incompetence.

10          Furthermore, the California Court of Appeal, like the trial judge, apparently gave no weight

11   to Burton's recent mental health records. The judge's belief that Burton was malingering ignored

12   the mental health records before him that covered the three-month period from Burton's September

13   19, 2006 arrest through the hearing on December 21, 2006. *See* Resp. Ex. 5. Those records

14   documented the longstanding nature of the very problems defense counsel reported to the court.

15   Burton reported to jail medical staff his problems with blackouts (*see* September 29, October 6,

16   October 20, and November 7 reports); auditory hallucinations (*see* September 19, September 29,

17   October 6, and November 7 reports); and paranoia (*see* November 15 report). Those records also

18   reflected that Burton was prescribed an antipsychotic and an antidepressant, but had stopped taking

19   both of them because he felt they had no effect on him. And the records show that Burton was

20   exhibiting inappropriate affect, smiling while complaining of depression, hearing voices, and

21   insomnia. *See* November 15, November 21, and December 14 reports. Significantly, *none* of the

22   mental health records in Respondent's exhibit 5 indicate that the mental health care providers

23   thought Burton was faking or malingering.

24          Again, the issue here (and before the California Court of Appeal) is not whether Petitioner

25   was in fact competent to stand trial, but only whether a reasonable judge in the position of the trial

26   judge would have had a bona fide or good faith doubt about Petitioner's competency. Given the

27   evidence set out at length above, a reasonable judge should have had such doubt and should have

28

United States District Court

For the Northern District of California

1   held a competency hearing and the Court of Appeal's determination to the contrary was

2   unreasonable.

3          The Court of Appeal cited four cases as supporting its conclusion that there was not

4   substantial evidence of Burton's incompetence, *People v. Blair*, 36 Cal. 4th 686, 711 (2005); *People*

5   *v. Young*, 34 Cal.4th 1149, 1217-1218 (2005) (2005); *People v. Koontz*, 27 Cal. 4th 1041, 1064

6   (2002); and *People v. Rodrigues*, 8 Cal. 4th 1060, 1110-1111 (1994).  *McDaniels*, 2008 WL

7   4003116 at *5.  But these cases stand only for the proposition that evidence which does not go to a

8   defendant's present inability to assist in his defense – general evidence of mental illness, for

9   instance, or of incompetence at an earlier time – is not sufficient to trigger the responsibility to hold

10  a hearing.  *See Blair*, 36 Cal. 4th at 714 (holding that defendant's having been found insane and

11  confined to a mental institution fifteen years earlier "was insufficient to compel a doubt whether

12  defendant had the mental capacity to understand the proceedings against him in the current

13  prosecution," and that judge misspoke when he referred to defendant as a "psychopath," a condition

14  involving lack of touch with reality and thus implying an inability to assist with his defense); *Young*,

15  34 Cal. 4th at 1218 ("Neither [a defense psychologist]'s testimony nor the testimony of defendant's

16  family members and former teachers revealed any information suggesting defendant's present

17  incompetence to stand trial.");  *Koontz*, 27 Cal. 4th at 1068-69 (court's doubts about competency of

18  defendant seeking to represent himself referred to his lack of legal knowledge rather than mental

19  condition); *Rodrigues*, 8 Cal. 4th at 1110-11 (evidence that defendant suffered migraines and a

20  possible seizure at age two or three not substantial evidence of mental illness at time of trial, nor was

21  testimony of psychiatrists, one of whom had not examined defendant and the other of whom offered

22  only a tentative opinion about possible brain damage).  In the case at bar, there was considerable and

23  substantial evidence of Burton's inability to assist his defense at the time of trial.  The cases cited by

24  the Court of Appeal thus are inapposite.

25         Accordingly, the Court concludes that relief in not barred by 28 U.S.C. § 2254(d)(2).  *See*

26  *Dreyer*, 693 F.3d at 811 (distinguishing cases in which it was found that no hearing was necessary

27  because there were "no statements by counsel or medical diagnoses that would have produced a

28  genuine doubt as to the defendant's competency"); *Taylor v. Maddox*, 366 F.3d 992, 1005 (9th Cir.

2004) (unreasonable determination of the facts where state court fails to consider and weigh highly probative, relevant evidence, central to petitioner's claim, that was properly presented and made part of the state-court record).

F.  Retroactive Competency Hearing

When a habeas petition is granted on grounds a competency hearing should have been held, if "the record contains sufficient information upon which to base a reasonable psychiatric judgment," a retroactive competency hearing may be held by the state court, rather than retrying the petitioner. *Odle*, 238 F.3d at 1089-90. Here, however, the record is sparse and not sufficient to allow a retroactive hearing. The State of California must either release Petitioner or retry him. *See Maxwell v. Roe*, 606 F.3d at 577.

**IV.  CONCLUSION**

The petition for writ of habeas corpus is **GRANTED**. The State of California shall commence proceedings to Petitioner within 120 days of the date of this order or release him.

The Clerk shall send a copy of this order to the Alameda County Public Defender's Office. The Court requests that the Alameda County Public Defender obtain representation for Burton in connection with his return to state court if he meets the eligibility requirements. (Burton was represented by attorney Jason Davis at his trial in 2006-2007 in *People v. Burton and McDaniels*, Case No. 153659A&B.)

IT IS SO ORDERED.

Dated:  December 20, 2012

EDWARD M. CHEN
United States District Judge

United States District Court
For the Northern District of California

25